IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ROBERTS, an individual; and KENNETH MCKAY, an individual, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>C.R. ENGLAND, INC., a Utah corporation; OPPORTUNITY LEASING, INC., a Utah corporation; and HORIZON TRUCK SALES AND LEASING, LLC., a Utah Limited Liability Corporation,<br><br>    Defendants.<br>_____/ | No. C 11-2586 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIM UNDER THE CALIFORNIA FRANCHISE INVESTMENT LAW AND DEFERRING RULING ON MOTION TO TRANSFER VENUE (Docket No. 18) |

    Plaintiffs Charles Roberts and Kenneth McKay have brought a putative class action against Defendants C.R. England, Inc., Opportunity Leasing, Inc. and Horizon Truck Sales and Leasing, LLC, on behalf of themselves and others similarly situated. Roberts and McKay allege numerous causes of action under California, Utah and Indiana law, as well as the Federal Telemarketing and Consumer Fraud and Abuse Prevention Act.

Roberts and McKay each entered into two contracts, both of which contain a mandatory forum selection clause that identifies Utah as the required forum. Defendants invoke the forum selection clauses and move to dismiss this action, pursuant to Federal Rules of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and (3) for improper venue, and move to dismiss or transfer the action, under Title 28 U.S.C. § 1406(a). In the event that the Court does not dismiss or transfer the case pursuant to the forum selection clauses, Defendants seek to transfer the action for convenience, pursuant to Title 28 U.S.C. § 1404(a). Finally, Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice Plaintiffs' claim for violation of the California Franchise Investment Law (CFIL). Plaintiffs oppose the motions.

Having considered the parties' submissions and oral argument, the Court GRANTS, with leave to amend, Defendants' motion to dismiss Plaintiffs' CFIL claim and defers ruling on the motion to transfer the action. If Plaintiffs make out a CFIL claim, the Court will deny Defendants' motion to transfer, but if they fail to do so, transfer under § 1404(a) and § 1406(a) will be warranted.

## BACKGROUND

Plaintiffs' First Amended Complaint alleges that Defendants fraudulently induced them to purchase a business opportunity and claims the following facts.

2

Defendants are affiliated transportation industry companies headquartered in Salt Lake City, Utah, with offices and operations in California, Indiana and elsewhere. The two contracts that Plaintiffs entered into were an Independent Contractor Operating Agreement (ICOA) with C.R. England, and a Horizon Truck Sales and Leasing Vehicle Lease Agreement (Truck Leasing Agreement) with Horizon.

C.R. England provides its customers, which include Wal-Mart, with shipping services, principally transporting temperature-sensitive freight around the country by tractor-trailer. C.R. England uses truck drivers employed directly by the company, driving company-owned trucks, but the majority of goods are transported by drivers who have purchased what the First Amended Complaint refers to as the "Driving Opportunity."

Defendants advertised the Driving Opportunity nation-wide. After viewing C.R. England's online advertising for work and training, Roberts and McKay contacted the company, and enrolled in its driver training school in Mira Loma, California. Roberts and McKay each paid $3,000 for the driver training school by taking out a loan from Eagle Atlantic Financial for the full amount, at eighteen percent interest.

The curriculum at the driving school included the "England Business Guide." During the training, representatives from C.R. England and Horizon discussed employment opportunities with C.R. England, the Driving Opportunity, and comparative income rates

3

under both arrangements. Defendants' representatives sought to persuade the trainees, including Roberts and McKay, to purchase the Driving Opportunity rather than pursue employment with C.R. England. After completing the school and securing their commercial driver's licenses, Roberts and McKay spent approximately ninety days on the road as "back up drivers" for C.R. England, satisfying "Phase I" and "Phase II" of their hands-on training.

After Phase II, trainees could travel to Salt Lake City, Utah or Burns Harbor, Indiana for additional training and classes. Roberts and McKay received their post-Phase II training in Salt Lake City. There Defendants formally offered Roberts and McKay the Driving Opportunity at issue in this case, described, in part, in a document entitled, "The Horizon Truck Sales and Leasing Independent Contractor Program." 1AC, ¶ 48 and Ex. D. The description stated,

> This program allows you to further your career by becoming an Independent Contractor. You can lease a truck and avoid the hassles and initial expenses of buying a truck . . . Program highlights are:
>
> - An operating agreement with C.R. England
> - **BEST PAY** in the industry, earn up to $1.53 per mile . . .
> - Friendly priority dispatch with an average length of haul of **1,500** miles
> - Successful business plan with mentoring and support staff

Id. (emphasis in original). Roberts and McKay allege that this explanation of the program and other representations by

Defendants gave fraudulent income projections and expense estimates and concealed the high failure rates of individuals who purchased the Driving Opportunity.

At the post-Phase II training, C.R. England and Horizon told Roberts and Mckay, who were disinclined to purchase the Driving Opportunity and sought company employment, that no employment positions were available and/or that they had to purchase the Driving Opportunity for a minimum of six months before being considered for employment.

After Roberts and McKay agreed to purchase the Driving Opportunity, Defendants presented them, for the first time, with the Driving Opportunity contracts, namely the ICOA and Truck Leasing Agreement. According to Plaintiffs' allegations, both contracts "were part of a single transaction and constituted the sale of business opportunities and/or franchises under applicable law," and constituted a franchise under federal law, California law, and Utah law. 1AC ¶ 59. Roberts and McKay entered into the ICOA and Truck Leasing Agreement.

The ICOA provides that the contractor "shall lease to [C.R. England] and operate the [truck], furnishing drivers and all necessary labor to transport, load and unload, and perform all other services necessary to the movement from origin to destination of, all shipments offered by [C.R. England] and accepted by [the contractor]." 1AC, Ex. E, ¶ 1.A. Under the agreement, C.R. England has "no express or implied obligation" to

make any minimum use of the truck, to use the truck at any particular time or location, or to guarantee any amount of revenue to the contractor. Id. The contractor may refuse any specific shipment offered by C.R. England as long as, in its reasonable judgment, it is nonetheless able to meet the needs of its customers. The ICOA states that a contractor is not required to purchase or rent any products, equipment, or services from C.R. England as a condition of entering into the agreement. 1AC, Ex. E ¶ 1.B.

According to the ICOA, contractors' "Financial, Managerial, and Operating Responsibilities" include, but are not limited to, (1) selecting and supervising all workers the contractor engages, including ensuring their compliance with C.R. England's safety policies and procedures; (2) selecting, securing, and maintaining the contractor's truck, and deciding when, where, and how maintenance and repairs are to be performed; (3) selecting all routes and refueling stops; (4) scheduling all work hours and rest periods; (5) loading and unloading all freight (if the shipper or consignee does not assume such responsibilities); (6) paying all operating expenses, including all applicable wages earned by persons employed by the contractor, and all expenses of fuel, oil, tires, and other parts and supplies; and (7) obtaining, installing, and operating in each leased truck, at the contractor's sole expense, communications and tracking equipment

technically and functionally compatible with the Qualcomm® OmniTRACS system utilized by C.R. England.  1AC, Ex. E, ¶ 7.

Under the ICOA, C.R. England has "exclusive possession, control, and use" of the truck for the duration of the ICOA.  1AC, Ex. E, ¶ 8.  "At [the contractor's] request, subject to the terms and conditions of <u>Attachment 12</u>, [C.R. England] may approve certain alternative uses of the [truck] on behalf of other authorized carriers or of shippers."  <u>Id.</u>

Finally, Roberts and McKay allege that Horizon is an alter ego of C.R. England, and C.R. England has designated Horizon as the entity to lease to contractors trucks and other items "necessarily utilized in the Driving Opportunity."  1AC ¶ 28.  The Truck Leasing Agreements that Roberts and McKay signed on September 29, 2009 and July 13, 2009, respectively, indicate that they entered into contracts with Opportunity Leasing, Inc., doing business as Horizon Truck Sales and Leasing.[1]

DISCUSSION

I. Motion to Dismiss CFIL Claim

Defendants challenge Roberts' and McKay's claim under the CFIL.  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

---

[1] The Utah corporate and business registration for Opportunity Leasing, Inc., doing business as Horizon Truck Sales and Leasing, expired on August 28, 2008 because a "different entity was created."  1AC, Ex. H at 44-45.  Horizon Truck Sales and Leasing LLC was created on August 28, 2008.  1AC, Ex. H at 42.

7

R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is

8

accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

Under the CFIL,

> (a) "Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> > (1) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
> >
> > (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and
> >
> > (3) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Corp. Code § 31005.

With regard to the first requirement, East Wind Express v. Airborne Freight Corporation, 95 Wash. App. 98 (1999), is instructive. There, the Washington State Court of Appeals interpreted the definition of a franchise under Washington's franchise law statute, which mirrors the CFIL. Airborne conducted a nation-wide delivery service for packages from pick-up point to destination. After the packages were picked up, they were delivered to a sorting facility and then routed to an ultimate destination station. Airborne used company employees or independent contractors to deliver the packages from the destination station to its customers. Airborne billed the

9

customer and was responsible for the package from pick-up to ultimate destination. East Wind was not entitled to receive any portion of the charges made by Airborne to its shippers. Instead, Airborne paid East Wind based on the average number of packages it carried per day. Id. at 100-101. The contract permitted East Wind to use the Airborne trademarks or tradename on vehicles and driver uniforms and deemed such use an advertising service, compensated by Airborne. The court determined that East Wind was not a franchisee because it did not offer, sell, or distribute transportation services to the customers who shipped goods with Airborne. Id. at 105. Rather, the customers were the customers of Airborne, not of East Wind. Id. at 104.

Similarly, in Lads Trucking Company v. Sears, Roebuck and Co., 666 F. Supp. 1418, 1420 (C.D. Cal. 1987), the court explained, "The [franchise] arrangement presupposes the establishment of a business relationship between the franchise and his customer so that the latter looks to the franchisee in matters of complaint for quality of product, etc." Lads contracted with Sears to deliver goods purchased by Sears customers to their homes. Lads was indirectly required to pay a monthly charge exacted for parking Lads trucks on Sears property. The court determined that this was not a franchise.

Here, Roberts and McKay contend that C.R. England served as the customer, in addition to being the franchisor. They assert that they purchased a right to sell transportation services to

C.R. England by accepting the ICOA and Truck Leasing Agreement. Defendants argue that such an agreement does not constitute a franchise within the meaning of the CFIL. Roberts and McKay are correct that the CFIL does not specify that one who offers, sells or distributes services to another is not a franchisee of the other. The California legislature could have specified that such an arrangement does not constitute a franchise. For example, the Business Opportunity Rule set forth in the federal Trade Regulation Rules specifies that "[t]he term business opportunity means any continuing commercial relationship created by any arrangement or arrangements whereby: (1) A person (hereinafter 'business opportunity purchaser') offers, sells, or distributes to any person <u>other than a 'business opportunity seller</u>' (as hereinafter defined), goods, commodities, or services . . ." 16 C.F.R. § 432.7 (emphasis added). Still, the omission, without more, is not a persuasive indication that the legislature intended the statute to cover a business arrangement such as that presented in this case. Such a reading would transform many independent contractor arrangements into franchises. Absent a clearer signal from the legislature, extending the CFIL in the manner Plaintiffs seek is unwarranted.

The second element in the definition of a franchise requires that the operation of the franchisee's business pursuant to the franchisor's system is substantially associated with the franchisor's trademark or other commercial symbols. In <u>Lads</u>, the

11

court rejected the argument that this element was satisfied because Sears required the plaintiff's trucks to be painted a certain color and carry the Sears logo and name. 666 F. Supp. at 1420. Similarly, in East Wind the mere use of the purported franchisor's trademarks was not sufficient to satisfy this requirement. Roberts and McKay allege in a conclusory fashion that their business was substantially associated with C.R. England's trade or service mark or logotype. 1AC ¶ 88. They attest, in their supporting declarations, that they each drove a truck and trailer emblazoned with C.R. England's commercial symbols. In addition, the Truck Leasing Agreement prohibits drivers from adding, removing or changing any items affixed to the truck. However, under East Wind and Lads, it is not enough that the trademarks were used or were required to be used.

Finally, to be a franchisee one must pay, directly or indirectly, a franchise fee. Roberts and McKay claim that they paid a franchise fee by paying Defendants' fees for training, truck rental, computer rental, operational equipment, insurance, signs, maintenance, gas, promotional materials and other items required "for the right to enter the Driving Opportunities." 1AC ¶ 86. However, these payments appear to be for ordinary business expenses that do not constitute a franchise fee. See Thueson v. U-Haul Intern., Inc., 144 Cal. App. 4th 664, 676 (2006) (finding that monthly fee for a telephone line and the cost of a leased

computer system did not constitute a franchise fee). There is no indication that they amount to a disguised franchise fee.

Plaintiffs have failed to allege that they were franchisees under the CFIL, warranting dismissal of the CFIL claim. Leave to amend is granted.

II. Enforceability of the Forum Selection Clauses

Roberts and McKay argue that the forum selection clauses in the ICOA and Truck Leasing Agreement should not be enforced. In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972), the Supreme Court held that a forum selection clause is presumptively valid and should not be set aside unless the parties challenging the clause "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." A forum selection clause is unreasonable if (1) it was incorporated into the contract as a result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court, or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. Richards v. Lloyd's of London, 135 F.3d 1289, 1294 (9th Cir. 1997). Roberts and McKay contend that the forum selection clause should be disregarded on the first and third grounds.

In Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000), the Ninth Circuit concluded that California Business and Professions Code section 20040.5 expresses a strong public policy in favor of protecting California franchisees, such that a provision that requires a California franchisee to resolve claims related to the franchise agreement in a non-California court is unenforceable. At this juncture, Roberts and McKay have not successfully alleged that they purchased a franchise.

Roberts and McKay contend, in the alternative, that the forum selection clause is unenforceable because it was incorporated into the contract as a result of fraud, undue influence, or overweening bargaining power. Defendants' principal response is that the fraud and undue influence must be specific to the inclusion of the forum selection clause, as opposed to the contract as a whole, and here they are not. Defendants rely on Afram Carriers, Inc. v. Adele Najar VDA De Panta, 145 F.3d 298 (5th Cir. 1998), which held that only when the forum selection clause itself was obtained in contravention of the law will the federal courts disregard it. Afram Carriers involved a family that settled a dispute arising from the father's death from a workplace accident. The Fifth Circuit held that evidence that the settlement contract as a whole was unreasonable was ineffective to show that the forum selection clause specifically was the result of fraud or overreaching. Id. at 301-02.

The Ninth Circuit applied similar reasoning in <u>Richards v. Lloyd's of London</u>, 135 F.3d 1289, 1297 (9th Cir. 1998), rejecting the plaintiffs' claims of fraud because the purported fraud went to the contract as a whole, not to the inclusion of the choice of forum clause itself. The plaintiffs did not allege that Lloyd's misled them as to the legal effect of the choice of forum clause. <u>Id.</u> Nor did they allege that the clause was fraudulently inserted without their knowledge. <u>Id.</u> Accordingly, the Ninth Circuit enforced the forum selection clause.

Here, Roberts and McKay were not given notice of the forum selection clauses in the ICOA and Truck Leasing Agreements at the time they paid for their driving school, because those contracts were not provided until the post-Phase II training in Salt Lake City. Roberts and McKay assert that Defendants overreached because, had they rejected the ICOA and Truck Leasing Agreement in Salt Lake City, they would have spent thousands of dollars on meaningless training. This contention, however, goes to the contract as a whole and is not specific to the forum selection clause. Therefore, the forum selection clause is not rendered unenforceable on this ground.

The forum selection clause also survives review for fundamental fairness. In <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 595 (1991), the Florida forum selection clause contained in the plaintiffs' passenger ticket was enforceable because the cruise line's principal place of business was in

15

Florida, many of its cruises departed from and returned to Florida ports, there was no evidence of inclusion of the forum clause by fraud or overreaching, and the plaintiffs conceded that they had been given notice of the clause and, thus, presumably had an opportunity to reject it. Similarly, Defendants' principal place of business is located in Utah. Roberts and McKay, and many others, received training and entered into the ICOA and Truck Leasing Agreement in Salt Lake City. Roberts and McKay had an opportunity to review the ICOA and Truck Leasing Agreement prior to signing those contracts, and, as noted earlier, there are no allegations of fraud specific to the forum selection clause. Accordingly, this case is readily distinguishable from Shute and Corona v. American Hawaii Cruises, Inc., 794 F. Supp. 1005 (D. Haw. 1992).

Unless Plaintiffs are able to plead a CFIL claim, the forum selection clauses in the ICOA and Truck Leasing Agreement are enforceable and will require the transfer of this action to the District of Utah.

III. Transfer for Convenience

Even if the forum selection clauses were unenforceable, an order transferring the action, pursuant to Title 28 U.S.C. § 1404(a), will be warranted, unless Roberts and McKay successfully amend their complaint to allege a CFIL claim.

Title 28 U.S.C. § 1404(a) provides, "For the convenience of the parties and witnesses, in the interest of justice, a district

16

court may transfer any civil action to any other district or division where it might have been brought." A district court has broad discretion to adjudicate motions for transfer on a case-by-case basis, considering factors of convenience and fairness. See Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988). Under section 1404(a), the district court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two fora, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Jones, 211 F.3d at 498-99. In addition, "the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis." Id. at 499. However, the relevant public policy of the forum state, although not dispositive, "is at least as significant a factor in § 1404(a) balancing" as the presence of the forum selection clause. Id. at 499, 499 n.21. The movant bears the burden of justifying the transfer by a strong showing of inconvenience. Decker Coal v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

The greatest number of factors supports transferring the case to Utah. The first factor favors Utah because the ICOA and Truck Leasing Agreement were provided and signed in that state. On balance, the fourth factor--the parties' respective contacts with the forum--also favors Utah. Defendants have greater contacts with Utah, where they are headquartered. Although Roberts and McKay live in California, they seek to represent a nation-wide class of drivers, many of whom may not have had contact with this district, but likely have had contact with Utah. The sixth factor, the cost of litigation, appears to favor transfer, as well. Although Roberts, McKay and certain drivers and witnesses live in California, as previously mentioned, they do not necessarily live in this district. The remaining drivers live in locations throughout the United States. Utah is more centrally located than this district. Overall, three factors in the transfer determination favor Utah.

The third factor favors this district only slightly because Plaintiffs' choice of forum in this action is entitled to reduced deference because they seek to represent a class. Lou, 834 F.2d at 739. Furthermore, McKay lives outside this district. Forrand v. Fed. Express Corp., 2008 U.S. Dist. LEXIS 10858, *7 (N.D. Cal.) (holding that deference owed to a nonresident plaintiff's choice of forum is "substantially reduced.").

The remaining factors are neutral. The second factor does not favor either State because Roberts and McKay have brought

claims under Utah, Indiana, California and federal law, such that no forum is positioned to be the most familiar with the law governing the case.  The fifth factor is neutral because, although the claims arise from contracts entered into while Roberts, McKay and other drivers were in Salt Lake City, the claims are based also on representations made in California and nation-wide.  The seventh and eighth factors relate to the availability of compulsory process to compel attendance of unwilling non-party witnesses, and the ease of access to sources of proof.  Because the parties have yet to exchange initial disclosures, it is difficult to anticipate what witnesses and evidence will be needed for trial.  Moreover, modern technology has made possible the electronic exchange of documents, minimizing the costs associated with transporting documentary evidence, whether from an office in Utah or an office in California.  As a result, access to proof and witnesses does not clearly favor California or Utah.

In sum, Defendants have met their substantial burden to demonstrate that transferring this case to Utah is warranted, pursuant to 28 U.S.C. § 1404(a), unless a CFIL claim is properly alleged.

CONCLUSION

Defendants' motion to dismiss Plaintiffs' CFIL claim is GRANTED with leave to amend.  Within ten days from the date of this order, Roberts and McKay may amend their complaint to address the deficiencies in their CFIL claim, if they can do so

19

truthfully.  Within seven days after they file their amended complaint, Defendants may move to dismiss the claim with a brief not to exceed eight pages.  Within seven days after the motion is filed, Roberts and McKay shall respond in a brief not to exceed eight pages.  Defendants may submit a four page reply within four days.  The Court will take the matter under submission on the papers and will resolve the motion to transfer once it is determined whether Plaintiffs state a cognizable CFIL claim.

IT IS SO ORDERED.

Dated: 11/22/2011

CLAUDIA WILKEN
United States District Judge