IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ROBERTS, an individual; and KENNETH MCKAY, an individual, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>C.R. ENGLAND, INC., a Utah corporation; OPPORTUNITY LEASING, INC., a Utah corporation; and HORIZON TRUCK SALES AND LEASING, LLC., a Utah Limited Liability Corporation,<br><br>    Defendants.<br>_____/ | No. C 11-2586 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CLAIM UNDER THE CALIFORNIA FRANCHISE INVESTMENT LAW AND MOTION TO TRANSFER VENUE (Docket Nos. 18 and 40) |

    Plaintiffs Charles Roberts and Kenneth McKay have brought a putative class action against Defendants C.R. England, Inc., Opportunity Leasing, Inc. and Horizon Truck Sales and Leasing, LLC, on behalf of themselves and others similarly situated. Previously, Defendants moved to dismiss Plaintiffs' claim for violation of the California Franchise Investment Law (CFIL), for failure to state a claim, and moved to transfer the case to the District of Utah, pursuant to Title 28 U.S.C. §§ 1404(a) and 1406(a). Docket No. 18. On November 22, 2011, the Court dismissed Plaintiffs' CFIL claim, with leave to amend, and deferred ruling on Defendants' motion to transfer. The Court stated that the transfer of the case would be contingent upon the

ability of Plaintiffs to amend their complaint to state a cognizable CFIL claim. Subsequently, Plaintiffs filed a Second Amended Complaint and Defendants moved to dismiss the amended CFIL claim. Docket No. 40. The Court has taken the motion under submission on the papers. Having considered all of the parties' submissions, the Court GRANTS Defendants' motion to dismiss and transfers the action to the District of Utah.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

2

DISCUSSION

The Court previously dismissed Plaintiffs' CFIL claim for failure to allege a franchise within the meaning of the statute. Under the CFIL,

> (a) "Franchise" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons by which:
>
> > (1) A franchisee is granted the right to engage in the business of offering, selling or distributing goods or services under a marketing plan or system prescribed in substantial part by a franchisor; and
>
> > (2) The operation of the franchisee's business pursuant to such plan or system is substantially associated with the franchisor's trademark, service mark, trade name, logotype, advertising or other commercial symbol designating the franchisor or its affiliate; and
>
> > (3) The franchisee is required to pay, directly or indirectly, a franchise fee.

Cal. Corp. Code § 31005. The Court determined that Plaintiffs' First Amended Complaint did not meet the three requirements necessary to allege a franchise. Namely, the complaint failed to allege that Plaintiffs were granted the right to engage in a franchise business, that the operation of Plaintiffs' business was substantially associated with C.R. England's trademark or other business symbols, and that Plaintiffs paid a franchise fee.

With regard to the first requirement, Plaintiffs' earlier complaint alleged that they had purchased a right to sell transportation services to C.R. England by entering into the Independent Contractor Operating Agreement (ICOA) and the Horizon Truck Sales and Leasing Vehicle Lease Agreement (Truck Leasing Agreement). The Second Amended Complaint, however, alleges that

3

Plaintiffs were granted the right to offer, sell and distribute services to C.R. England and "third party customers whose goods were being picked-up, loaded, transported, unloaded, and delivered."  2AC at ¶ 95.  Plaintiffs alleged that they were granted the right to engage in a business offering, selling, and/or distributing big rig truck driving, labor, transport, pick-up, delivery, loading, unloading, and other related services to third party customers with C.R. England acting as an intermediary. Id.

Plaintiffs argue that because of the amended allegations, Lads Trucking Company v. Sears, Roebuck and Co., 666 F. Supp. 1418, 1420 (C.D. Cal. 1987), and East Wind Express v. Airborne Freight Corporation, 95 Wash. App. 98 (1999), no longer apply to the case.  East Wind and Lads are analogous to this case because both cases pertained to alleged franchise businesses involving the defendants' contracts with the plaintiffs for truck delivery services.  In East Wind, the Washington State Court of Appeals interpreted the definition of a franchise under Washington's franchise law statute, which mirrors the CFIL.  95 Wash. App. at 100-101.  Airborne conducted a nation-wide delivery service for packages from pick-up point to destination.  After the packages were picked up, they were delivered to a sorting facility and then routed to an ultimate destination station.  Airborne used company employees or independent contractors to deliver the packages from the destination station to its customers, billed the customers and

4

was responsible for the package from pick-up to ultimate destination. Airborne paid East Wind based on the average number of packages it carried per day. The court determined that East Wind was not a franchisee because it did not offer, sell, or distribute transportation services to the customers who shipped goods with Airborne. Id. at 105. The customers were the customers of Airborne, not of East Wind. Id. at 104.

Similarly, in Lads Trucking Company v. Sears, Roebuck and Co., 666 F. Supp. 1418, 1420 (C.D. Cal. 1987), the plaintiff contracted with Sears to deliver goods purchased by Sears customers to their homes, and was indirectly required to pay a monthly charge exacted for parking their trucks on Sears property. The court determined that this was not a franchise, explaining that the "[franchise] arrangement presupposes the establishment of a business relationship between the franchise and his customer so that the latter looks to the franchisee in matters of complaint for quality of product, etc." Id.

Although Plaintiffs allege that they engaged in a franchise business by virtue of the services they offered and distributed to third party customers, Gentis v. Safeguard Business Systems, Inc., 60 Cal. App. 4th 1294 (1998), and Kim v. Servosnax, Inc., 10 Cal. App. 4th 1346 (1992), cases upon which they rely, do not establish that such business relationships support the existence of a franchise under the CFIL. Contrary to Plaintiffs' suggestion,

5

neither case undermines Lads or East Wind. Gentis and Kim are also distinguishable from the present action.

In Gentis, distributors of recordkeeping systems and office products were found to have engaged in a franchise relationship under the CFIL because they offered and distributed goods and services under the defendant's marketing plan. 60 Cal. App. 4th at 1304-05. Unlike this case, the plaintiffs offered the defendant's goods and services for sale by, among other things, contacting existing customers and recruiting new business, calling on customers to demonstrate products, solving customers' problems, and soliciting orders for goods subject to the defendant's approval. Id. at 1302. In addition, the plaintiffs directly distributed the defendant's goods to customers. Id. The court affirmed that the plaintiffs offered and distributed the defendant's goods and services within the meaning of the CFIL, even though the plaintiffs lacked the authority to enter into binding sales contracts.

Here, however, there are no allegations that Plaintiffs had a comparable relationship with third party customers. Plaintiffs allege that they broke down pallets at the request of third party customers and "provided a variety of services directly to third party customers and often acted at the customers' direction to meet the customers' needs." 2AC at ¶ 98. However, such allegations are not akin to the specific activities found in Gentis where the plaintiffs actively cultivated customer

6

relationships and, in this way, offered and distributed services and goods to third party customers within the meaning of the CFIL. According to the amended allegations, the third party customers in this case remain C.R. England's customers, and C.R. England remains Plaintiffs' principal customer.

Kim, 10 Cal. App. 4th at 1346, is even less persuasive than Gentis, with regard to the first prong of the CFIL.  There, the court grappled solely with the issue of whether the plaintiff's business was substantially associated with the defendant's trademark.  Id. at 1353.  The plaintiff was a licensee of the defendant corporation, which contracted with owners of office complexes to establish and operate on-site cafeterias.  After the defendant entered into a contract with a company called Nicolet Magnetic Corporation to operate a cafeteria, the defendant sold the license to the plaintiff to operate the cafeteria.  Plaintiffs accurately point out that the court found "two levels of customers"--Nicolet and the actual patrons of the cafeteria.  However, neither tier of customer relationship identified in Kim suffices to establish that Plaintiffs in this case have alleged a franchise relationship under the CFIL.

Finally, Plaintiffs' citations to the prior version of the Federal Trade Commission's Franchise Rule, 16 C.F.R. § 436.2 (2004), and amendments to the federal regulation that have yet to become effective are not persuasive.  As noted in the Court's prior order, the text of the CFIL does not indicate that the

7

California legislature intended the statute to cover a business agreement that appears to be an independent contractor arrangement.  Plaintiffs have not pointed to relevant legislative history to establish that the state legislature sought to extend the CFIL in the manner they argue.  Although the case law calls for the liberal construction of the definition of a franchise under the CFIL, see, e.g., Gentis, 60 Cal. App. 4th at 1298-99, the statute is not without limits.

In sum, Plaintiffs have failed to claim that they were granted a right to offer or distribute services or goods to customers, as necessary to allege the first element in the definition of a franchise under the CFIL.

The second element in the definition of a franchise requires that the operation of the franchisee's business pursuant to the franchisor's system is substantially associated with the franchisor's trademark or other commercial symbols.  Previously the Court held that, under East Wind and Lads, the allegation that Plaintiffs' truck and trailer were required to be emblazoned with C.R. England's commercial symbols is insufficient to allege a business substantially associated with C.R. England's trademark. In the second amended complaint, Plaintiff further allege that C.R. England required them always to identify themselves as drivers for C.R. England in their communications with customers. 2AC at ¶ 109.  Plaintiffs further allege that they followed the policy in every interaction with customers, guards at facility

8

gates, internal dispatchers, warehousemen, and managers inside customer premises.  Id.  Finally, Plaintiffs claim that customers selected C.R. England to deliver services in partnership with Plaintiffs based on the association drawn between Plaintiffs and the name and goodwill attributed to C.R. England.  Id. at 111-12.

Under Kim, the case upon which Plaintiffs rely most heavily, such allegations are inadequate.  In Kim, the plaintiff franchisee operated a cafeteria pursuant to a license agreement with the defendant, selling food items to patrons who paid the plaintiff directly.  The court found that the plaintiff franchisee was "intimately associated" with the defendant "in the mind" of Nicolet, the location owner, and the association benefited the plaintiff franchisee.  10 Cal. App. 4th at 1355, 1357.  This action, however, is distinguishable because Plaintiffs did not directly sell their services to patrons and C.R. England did not deliver a "captive umbrella customer" to Plaintiffs.

The third and final element of a franchise under the CFIL requires that a franchisee must pay, directly or indirectly, a franchise fee.  The Second Amended Complaint adds allegations of the payment of substantial amounts in the form of a truck rental fee, a variable mileage fee, a general reserve fee held in an escrow account, a fee for a mobile communication terminal, and insurance and insurance administrative fees.  However, even if Plaintiffs have now alleged the payment of a franchise fee, their Second Amended Complaint does not adequately allege the first and

9

second elements required for a franchise under the CFIL. Therefore, Plaintiffs have not alleged a franchise under the CFIL.

CONCLUSION

Defendants' second motion to dismiss Plaintiffs' CFIL claim is GRANTED and the claim is dismissed without leave to amend. Because Plaintiffs have failed to allege a franchise under the CFIL, Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000), does not bar enforcement of the forum selection clauses in the ICOA and Truck Leasing Agreement, and the transfer of this action to the District of Utah is required under 28 U.S.C. § 1406(a).  Defendants have also met their substantial burden to demonstrate that transferring this case to Utah is warranted, pursuant to 28 U.S.C. § 1404(a).  The Clerk shall transfer the file to the District of Utah.

IT IS SO ORDERED.

Dated: 1/25/2012

CLAUDIA WILKEN
United States District Judge