# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES ROBERTS, an individual, and KENNETH MCKAY, an individual, on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>C.R. ENGLAND, INC., a Utah corporation; OPPORTUNITY LEASING, INC., a Utah corporation; and HORIZON TRUCK SALES AND LEASING, LLC, a Utah Limited Liability Corporation,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br>Case No. 2:12-cv-00302-RJS-BCW<br><br>Judge Robert J. Shelby<br>Magistrate Judge Brooke C. Wells |

Plaintiffs Charles Roberts and Kenneth McKay bring this class action on behalf of themselves and other truck drivers. They assert claims against two affiliated trucking companies, C.R. England, Inc. and Opportunity Leasing, Inc. Plaintiffs claim Defendants fraudulently induced thousands of individuals to enroll in C.R. England's driver training schools, then fed students misinformation to convince them to lease trucks and become independent contractor lease operators.

On January 31, 2017, the court certified a nationwide class of independent contractor lease operators who meet certain qualifications, for claims of fraud, negligent misrepresentation, breach of fiduciary duty, and unjust enrichment, and for claimed violations of the Utah Consumer Sales Practices Act (UCSPA), Utah Business Opportunity Disclosure Act (UBODA),

and Utah Truth in Advertising Act (UTIAA).[1] The class was certified under Rule 23(b)(3) of the Federal Rules of Civil Procedure.[2]

On April 26, 2017, Defendants filed a Motion to Alter or Amend [the] Class Certification Order.[3] In their Motion, Defendants initially sought several amendments to the Class Certification Order;[4] however, they later agreed to defer all but one of the issues raised: whether Plaintiffs' claims are subject to a mandatory opt-in notice requirement under Utah law.[5] Defendants also moved to certify a number of questions to the Utah Supreme Court.[6] The court now takes up these two issues.

## I.      Notice Requirement

Under the UCSPA, class action claims are subject to an opt-in notice requirement. Defendants argue this requirement applies not only to Plaintiffs' UCSPA claims, but to all of Plaintiffs' claims under Utah statutory and common law. However, Rule 23 of the Federal Rules of Civil Procedure calls for opt-out notice in federal class action claims. As a federal court sitting in diversity jurisdiction, the court must determine whether Federal Rule 23 or the opt-in provision of the UCSPA controls.

### A.   *Shady Grove*

A Supreme Court decision, *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Company*, provides the controlling authority for determining whether Federal Rule 23

---

[1] Dkt. 304 at 116.

[2] Dkt. 304 at 114.

[3] Dkt. 327.

[4] Dkt. 327.

[5] Dkt. 373 at 1.

[6] Dkt. 314.

or the UCSPA opt-in requirement applies in this case.[7]  In *Shady Grove*, the Court addressed a conflict between Rule 23 and a New York statute prohibiting class action suits to recover statutory penalties, including statutory interest.[8]  The plaintiff brought a putative class action in federal court under a separate state law providing for statutory interest.  The issue was whether New York's prohibition on class action suits for penalties or Federal Rule 23 (which would allow the suit) controlled.

Five justices held that Rule 23, not the state law restriction, applied.[9]  The decision was fragmented; Justice Scalia wrote for the plurality, Justice Stevens joined in the holding but concurred separately, and four justices dissented.[10]  In light of this split, the Tenth Circuit instructs that Justice Stevens's concurrence is controlling.[11]  Because Justice Stevens joined in Sections I and II-A of the plurality opinion, those parts also control.[12]

*Shady Grove* reiterates the "familiar" two-step framework that applies when a federal rule and a state law both seemingly govern.[13]  First, courts determine whether the federal rule directly conflicts with the state law.[14]  A direct conflict between a federal rule and state law exists if the

---

[7] 559 U.S. 393 (2010).

[8] *Id.* at 397.

[9] *Id.*

[10] *Id.* at 395-96.

[11] *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 ("[T]he Tenth Circuit has understood [Justice Stevens's] concurrence to be the controlling opinion in *Shady Grove*."); *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("When faced with a choice between a state law and an allegedly conflicting federal rule, we follow the framework described by the Supreme Court in *Shady Grove*, as laid out by Justice Stevens in his concurring opinion.").

[12] *See Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015) ([I]t is important to note that Justice Stevens joined parts of Justice Scalia's opinion. Those parts, labeled sections I and II–A, thus were joined by five justices; those parts were the opinion of the Court.").

[13] *Shady Grove*, 559 U.S. at 398.

[14] *Id.*

federal rule "answers the question in dispute,"[15] or put differently, if it is "sufficiently broad to control the issue before the Court."[16]

If there is a direct conflict, the federal rule applies as long as it represents a valid exercise of Congress's rulemaking authority under the Rules Enabling Act (REA).[17] A federal rule runs afoul of the REA if it "abridge[s], enlarge[s], or modif[ies] any substantive right."[18]

Justice Scalia, writing for the plurality in *Shady Grove*, read this REA limitation to require only that a federal rule "really regulate procedure."[19] This approach places the focus on the nature of the federal rule, not the conflicting state law. If the federal rule "governs only the manner and the means by which the litigants' rights are enforced, it is valid; if it alters the rules of decision by which [the] court will adjudicate [those] rights, it is not."[20] Applying that test, Justice Scalia likened Rule 23 to traditional joinder rules, finding it procedural in nature and therefore valid under the REA.[21]

Justice Stevens concurred in the result but advanced a different approach. Under his reading of the REA, a federal rule is invalid if its application in a case would effectively abridge, enlarge, or modify a state-created right or remedy.[22] Unlike the plurality, Justice Stevens's approach focuses on the nature of the competing state law. The *form* of the state law, whether traditionally substantive or procedural, is not dispositive; rather, the question is whether the law

---

[15] *Shady Grove*, 559 U.S. at 397-98 (citations omitted).

[16] *Id.* at 421 (internal quotations, citations, and ellipses omitted).

[17] *Id.*

[18] 28 U.S.C. § 2072(b).

[19] *Shady Grove*, 559 U.S. at 407.

[20] *Id.* (citing *Mississippi Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)) (quotations omitted) (brackets in original).

[21] *Id.* at 408.

[22] *Id.* at 422.

"function[s] as part of the State's definition of substantive rights and remedies."[23]  Federalism

concerns appear to animate Justice Stevens's view.[24]  Thus, a state might choose to employ a

"traditionally procedural vehicle as a means of defining the scope of substantive rights or

remedies, [and] federal courts must recognize and respect that choice."[25]

Even while narrowing the scope of instances in which a federal rule preempts state law,

however, Justice Stevens cautioned that the bar for finding an REA violation is still "a high one."

There must be "little doubt" that application of the federal rule would alter a state-created

substantive right.[26]  Almost all state laws have the potential to alter litigation outcomes, but only

those "intimately bound up in the scope of a substantive right or remedy" can displace federal

rules.[27]

Based on his "plain textual reading" of the statute before the Court, Justice Stevens

concluded that New York's prohibition on class actions for statutory penalties did not clear this

high bar.  The law reflected "a policy judgment about which lawsuits should proceed in New

York courts in a class form," not a rule "intimately bound up in the scope of a substantive right

or remedy."[28]

At least in the Tenth Circuit, where Justice Stevens's concurring opinion controls, the

correct analysis when a federal rule and a state law both seemingly apply is this: first, the court

---

[23] *Id.* at 416-17.

[24] *See, e.g. id.* at 420 ("In our federalist system, Congress has not mandated that federal courts dictate to state legislatures the form that their substantive law must take. And were federal courts to ignore those portions of substantive state law that operate as procedural devices, it could in many instances limit the ways that sovereign States may define their rights and remedies.").

[25] *Id.*

[26] *Id.* at 432.  *See also id.*at 426 n.10 ("It will be rare that a federal rule that is facially valid under [the REA] will displace a State's definition of its own substantive rights.").

[27] *Id.*at 432-33.

[28] *Id.* at 433-34.

determines whether there is a direct conflict between the two provisions. If so, the federal rule controls unless its application would violate the REA by altering a state-created substantive right. This inquiry looks not to the form of the state law, but to its plain language to determine whether it operates to "define[] the dimensions of a claim itself."[29] Applying this framework to the case at hand, Rule 23 applies to Plaintiffs' UCSPA claim and requires opt-out notice.

## B. Application of *Shady Grove*'s Two-Step Analysis

Returning to the instant case, at step one, Rule 23 and the UCSPA are in direct conflict.[30] Rule 23 squarely "answers the question in dispute" by categorically imposing opt-out notice.[31] The UCSPA, on the other hand, requires opt-in notice – Section 13-11-20(4) states that class notice must advise members that "the court will exclude [them] from the class, unless [they] request[] inclusion, by a specified date."[32] The two requirements flatly contradict each other.[33]

---

[29] *Id.* (quotation omitted).

[30] In *Shady Grove*, a majority of the Court found Rule 23 and the New York provision directly conflicted. Both "attempt[ed] to answer the same question" – i.e. whether the plaintiff's suit for statutory interest could be maintained as a class action. *Id.* at 398.

[31] For a class certified under Rule 23(b)(3), notice must inform members "that the court will exclude from the class any member who requests exclusion." *See also* 3 Newberg on Class Actions § 9:48 (5th ed.) ("The [Rule 23] class action mechanism is an opt-out, not opt-in, procedure."). Indeed, "no court has ever certified an opt-in class under 23(b)(3), and courts have denied certification of classes for which plaintiffs request an opt-in provision." *Id.*

[32] Utah Code Ann. § 13-11-20(4).

[33] Two district courts examined this issue in related contexts and also found a direct conflict. *Driscoll v. George Washington Univ.*, 42 F. Supp. 3d 52, 60-61 (D.D.C. 2012) ("Rule 23 provides a one-size-fits-all formula for deciding the class-action question, whereas the . . . opt-in provision attempts to answer the same question – i.e. it states that [the plaintiffs'] suit may not be brought as a collective action unless all plaintiffs give written consent to become a party.") (internal citations omitted); *Harris v. Reliable Reports Inc.*, No. 1:13-cv-210 JVB, 2014 WL 931070 (N.D. Ind. March 10, 2014) (noting the conflict between Rule 23 and state law opt-in provisions and proceeding to conduct an REA analysis under *Shady Grove*). These cases are also discussed below, in step two of the analysis.

The analysis at step two is more nuanced. Under Justice Stevens's controlling *Shady Grove* concurrence, Rule 23's opt-out provision applies to Plaintiffs' claims unless the UCSPA opt-in provision "function[s] as part of [Utah's] definition of substantive rights and remedies."[34]

By requiring potential class members to affirmatively opt in to a class action brought under the UCSPA, Section 13-11-20(4) is likely to limit class size. But while the opt-in notice requirement may affect litigation outcomes, that does not mean it "defines the dimensions of [the] claim itself."[35] Rather, the provision reflects Utah's "classical procedural calibration of making it easier to litigate [UCSPA class action] claims . . . only when it is it necessary to do so, and not making it *too* easy when the class tool is not required."[36] The UCSPA establishes substantive consumer rights and corresponding remedies, but a potential UCSPA class member's entitlement to those rights do not change based on whether the process for joining a suit entails opt-in or opt-out notice of the proceeding.

As in *Shady Grove*, the UCSPA's legislative history does not compel a different result. When evaluating legislative history in this context, Justice Stevens distinguished between "procedural rules adopted for *some* policy reason and seemingly procedural rules that are intimately bound up in the scope of a substantive right or remedy."[37] Legislative history is only helpful to the degree it "clearly describe[s] a judgment" that the law would operate to define the scope of substantive rights.[38]

---

[34] *Shady Grove*, 559 U.S. at 416-17.

[35] *Id.* at 433-34 (quotation omitted).

[36] *Id.* at 435 (emphasis in original).

[37] *Id.* at 433 (emphasis in original).

[38] *Id.*

Defendants highlight two statements made by legislators in 1973, indicating the UCSPA opt-in provision was to be a "major change in the concept of class action lawsuits,"[39] the effect of which would be to "limit the membership of the class to those who request [inclusion]."[40] Defendants also point out that the Utah Legislature modified the model act on which the UCSPA is based to specifically provide for opt-in notice.[41]  While this legislative history shows that Utah adopted the opt-in provision deliberately "for *some* policy reason" (i.e. to limit class membership), it does not "clearly describe a judgment" that the opt-in requirement is "intimately bound up" in the substantive rights and remedies provided by the UCSPA.

Of course, this case differs from *Shady Grove* in several ways.  First, the two state law provisions are substantively distinct.  The New York statute in *Shady Grove* prohibited class action suits for statutory penalties.  The provision at issue here, in contrast, requires a plaintiff affirmatively request inclusion in order enforce her USCPA-created rights in a class action suit. The impact of the New York law touches more directly on a potential plaintiff's substantive rights than does an opt-in requirement.  The former operates as a complete bar to class action certification, whereas the opt-in provision is better characterized as a hurdle – a change in the process class members must follow in order to join in the suit.[42]  Even with Justice Stevens's federalism concerns in mind, it is difficult to see how the UCSPA opt-in requirement could function to define Utah's substantive rights or remedies if New York's prohibition did not.

---

[39] Dkt. 374 Ex. B.

[40] Dkt. 374 Ex. A.

[41] Dkt. 327 at 31.

[42] *See Shady Grove*, 559 U.S. at 435 n.18 ("It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue.").

Two other distinctions weigh in the opposite direction.  First, the New York statute was one of general application found in the state procedural code, whereas the opt-in provision here is found within the text of the USCPA itself.  Second, the New York statute "expressly and unambiguously" applied to claims brought under federal law or the laws of other states.[43]  Justice Stevens thus found it "hard to see how [the law] could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies."[44]  Here, the opt-in provision on its face may apply only to class actions brought under the UCSPA.

But neither distinction compels a different result than that reached in *Shady Grove*.  The location of a law within state statutory codes can be useful in discerning the legislature's intent, but cannot in itself prove the law's procedural or substantive nature.[45]  Instead, whether a law is "intimately bound up in the scope of a substantive right or remedy"[46] is a legal question.  In this case, the UCSPA opt-in provision is not bound up in a substantive right or remedy.[47]

To the second point, the fact that the UCSPA opt-in provision does not "expressly and unambiguously" apply to claims under federal law and the laws of other states is not determinative.  As an initial matter, it is not clear whether the opt-in provision applies only to

---

[43] *Id.* at 432.

[44] *Id.*

[45] *Cf. Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) ("Here, Kansas' objective to create a civil proceeding is evidenced by its placement of the Act within the Kansas probate code, instead of the criminal code . . . ."); *Femedeer v. Haun*, 227 F.3d 1244, 1249 ("Legislative intent to enact a nonpunitive measure is ascertainable from the simple fact that the legislature placed the statute in the civil code as opposed to the criminal code.") (quoting the court below).

[46] *Shady Grove*, 559 U.S. at 433-34; *see also Lisk*, 792 F.3d at 1336 (11th Cir. 2015) ("[T]he question whether a federal rule abridges, enlarges, or modifies a substantive right turns on matters of substance – not on the placement of a statute within a state code.").

[47] Further, although the opt-in provision is part of the UCSPA, it is found in a section entitled "Class Actions," which provides procedural requirements for class certification and largely mirrors Rule 23.  Thus, the provision's location *within* the statute could be said to support its procedural nature.  *See Shady Grove*, 559 U.S. at 401 ("Rule 23 permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements.") (plurality opinion joined by Justice Stevens).

claims under the UCSPA or extends more broadly to all related claims regardless of their source of law.[48]  If it applies broadly, that would support the conclusion that it does not function to define Utah's rights or remedies, for the reasons explained by Justice Stevens in *Shady Grove*.[49]  However, even if the UCSPA is construed more narrowly to impose opt-in notice only for related claims under state law, that still falls well short of leaving "little doubt" that the requirement serves the function of defining Utah's substantive rights or remedies.

Two other district courts addressed similar conflicts and reached the opposite conclusion, finding application of Rule 23 over a state law opt-in provision would violate the REA.[50]  To distinguish those cases from *Shady Grove*, the courts in *Driscoll* and *Harris* relied heavily on the fact that the opt-in requirements in those cases, like here, were located within the text of the statutes creating the underlying rights of action.[51]  For the reasons discussed above, and considering Justice Stevens's merely passing mention of the New York statute's location in the state code,[52] the significant weight placed on this single factor appears misplaced.  More to the point, those cases contain relatively limited analyses under what this court construes as a relatively complex *Shady Grove* decision.

---

[48] See discussion of Section 13-11-23 in Part I.C, below.  Defendants argue the UCSPA opt-in provision here extends to all of Plaintiffs' claims – both statutory and common law claims.  Dkt. 427 at 15.  It is not obvious that Defendants' reading of the UCSPA would not also extend the opt-in requirement to class action claims related to the same transactions at issue here, but arising under federal law or the laws of other states.

[49] *Shady Grove*, 559 U.S. at 432 ("The text of CPLR § 901(b) expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State. And there is no interpretation from New York courts to the contrary. It is therefore hard to see how § 901(b) could be understood as a rule that, though procedural in form, serves the function of defining New York's rights or remedies.").

[50] *Driscoll*, 42 F. Supp. 3d at 62; *Harris*, 2014 WL 931070, at *8.

[51] *Driscoll*, 42 F. Supp. 3d at 62; *Harris*, 2014 WL 931070, at *8.

[52] *Shady Grove*, 559 U.S. at 436 ("[I]t seems obvious to me that we should respect the plain textual reading of § 901(b), *a rule in new York's procedural code* about when to certify class actions brought under any source of law, and respect Congress' decision that Rule 23 governs class certification in federal courts.") (emphasis added).

Under *Shady Grove*, Plaintiffs' UCSPA claims are subject to an opt-out notice requirement under Rule 23. Therefore, Defendants' Motion to Alter or Amend [the] Class Certification Order is DENIED in part as to the notice required for Plaintiffs' UCSPA claims.

### C. Plaintiffs' Non-UCSPA Claims

Defendants also seek to impose an opt-in requirement to Plaintiffs' other statutory and common law claims. Section 13-11-23 of the UCSPA states: "the remedies of this act are in addition to remedies otherwise available for the same conduct under state or local law, except that *a class action relating to a transaction governed by this act may be brought only as prescribed by this act*."[53] Defendants argue that this provision operates to extend the UCSPA's opt-in requirement to all of Plaintiffs' claims. However, because Rule 23 governs Plaintiffs' UCSPA claims, displacing the UCSPA opt-in provision, there is no basis to extend the opt-in provision to other claims. Defendants' Motion to Alter or Amend [the] Class Certification Order is DENIED in part as to the notice required for Plaintiffs' claims under the UBODA and UTIAA, and for fraud, negligent misrepresentation, breach of fiduciary duty, and unjust enrichment.

**II.     Certification of Questions to the Utah Supreme Court**

Defendants move to certify the following four questions to the Utah Supreme Court:

1. As a matter of state law, do Utah Code Ann. §§ 13-11-19(2) and 13-11-23 of the Utah Consumer Sales Practices Act (UCSPA) mean that in a class action relating to a transaction governed by the UCSPA, class members cannot seek statutory or actual damages for violations of the Utah Business Opportunity Disclosure Act or the Utah Truth in Advertising Act?

2. As a matter of state law, do Utah Code Ann. §§ 13-11-20(4)(a) and 13-11-23 of the Utah Consumer Sales Practices Act (UCSPA) mean that in a class action relating to a transaction governed by the UCSPA, the class notice as to claims for violations of the Utah Business Opportunity Disclosure Act and the Utah Truth in Advertising Act must advise class members that the court will exclude them from the class unless they request inclusion by a specific date?

---

[53] Utah Code Ann. § 13-11-23 (emphasis added).

3. Under the Utah Business Opportunity Disclosure Act, can information unrelated to selling or marketing services to third parties provided by a business to an independent contractor in order to help the independent contractor perform services for that same business qualify as "a sales program or marketing program" within the meaning of Utah Code Ann. § 13-15-2(1)(a)(iv)?

4. Under the Utah Business Opportunity Disclosure Act, can payments from an independent contractor to a business for the purchase of goods or services pursuant to written agreements be considered "initial required consideration," when the written agreements specifically state that the independent contractor need not purchase the goods or services as a condition for earning income in the alleged assisted marketing plan?[54]

Utah Rule of Appellate Procedure 41(a) provides an avenue for federal courts to certify a question to the Utah Supreme Court when "the state of the law of Utah applicable to a proceeding before the certifying court is uncertain."[55] However, "certification is not to be routinely invoked" each time a federal court is faced with new or unsettled questions of state law.[56] Instead, the court is to exercise "judgment and restraint" before certifying questions, particularly when a "reasonably clear and principled course" presents itself.[57]

While there is some uncertainty involved in each of Defendants' proposed questions, restraint is appropriate in this case. Defendants' second question relating to the notice provision of the USCPA is discussed at length above. In conducting its analysis, the court found sufficient guidance and authority to decide this question under controlling federal authority. The parties fully briefed the issues, presented oral argument, and provided ample authority with which to conduct a thorough analysis. The court has not yet reached Defendants' first question relating to

---

[54] Dkt. 314 at 3.

[55] Utah R. App. P. 41(a).

[56] *Copier by and Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (quoting *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988)).

[57] *Pino v. U.S.*, 507 F.3d 1233, 1236 (10th Cir. 2007).

the statutory damages provision of the UCSPA, but is confident it will be similarly guided if or when it reaches that issue.[58]

The court also declines to certify Defendants' third and fourth questions, concerning construction of the UBODA. These issues were addressed when Defendants' Motion for Partial Summary Judgment on Plaintiffs' UBODA claim was denied.[59] Requests for certification are "disapproved . . . when the district court has already ruled."[60] In deciding whether to certify a question, the court must consider "whether certification will conserve the time, energy, and resources of the parties as well as of the court itself."[61] When a party requests certification *after* a ruling, as is the case here, the time and resources already expended resolving the matter counsel against certification. Given the prior ruling and the amount of time passed since Plaintiffs' class was certified, the certification of these questions is not warranted.

---

[58] The parties agree this question is premature at this stage. *See* Dkt. 373 at 1.

[59] Dkt. 304. The court ruled adversely to Defendants on both points. *See* Dkt. 304 at 60-63 (considering whether Defendants made representations to bring them within UBODA's language of "sales program or marketing program," and finding a material issue of fact), *and* 58-59 (considering the element of "initial required consideration" in the UBODA, and finding a triable issue of fact as to whether C.R. England required drivers to pay initial consideration). In its Order, the court rejected Defendants' contention that the analysis should conform to the UBODA interpretation set forth in Rule 152-15-3, promulgated by the Utah Division of Consumer Protection. Dkt. 304 at 50 n.192. Defendants now argue the difference between the Order and Rule 152-15-3 "highlights the significance of certifying this issue here and now." Dkt. 314 at 14. That argument is not well taken. As Plaintiffs note, Dkt. 320 at 17 n.13, the court was aware of the Rule when it decided Defendants' Motion for Summary Judgment, and declined to consider the Rule in part due to its analysis of Utah case law relating to the retroactive applicability of administrative regulations. Dkt. 304 at 50 n.192. That reasoning still holds.

[60] *Boyd Rosene & Assocs,. v. Kansas Mun. Gas Agency*, 178 F.3d 1363, 1364 (10th Cir. 1999). *See also Massengale v. Okla. Bd. Of Exam'rs in Optometry*, 30 F.3d 1325, 1331 (10th Cir. 1994) ("We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court."); *1.800.Vending, Inc. v. Wyland*, No. 1:14-cv-121, 2017 WL 108033, at *2 (D. Utah Jan. 11, 2017) (denying a request for certification of an issue already decided because doing so would "in effect allow a party to make a motion, argue the merits, and then after losing on an issue, use certification as an interlocutory appeal from an interim decision by a federal court to the Utah Supreme Court.").

[61] *Boyd Rosene*, 178 F.3d at 1365.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Alter or Amend [the] Class

Certification Order[62] is DENIED in part as to the opt-in notice provision with prejudice, and

DENIED in part as to the remainder of the issues without prejudice.

Defendants' Motion to Certify Questions to the Utah Supreme Court[63] is DENIED.

**SO ORDERED** this 21st day of March, 2018.


BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[62] Dkt. 327.

[63] Dkt. 314.