Robert S. Boulter
Law Offices of Robert S. Boulter
1101 Fifth Avenue, Suite 310
San Rafael, CA  94901
Telephone:  (415) 233-7100
rsb@boulter-law.com

Kevin P. Roddy
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
kroddy@wilentz.com

Stephen E. Kravit
C.J. Krawczyk
Benjamin J. Glicksman
Aaron H. Aizenberg
Benjamin R. Prinsen
Kravit, Hovel & Krawczyk,
S.C.
825 N. Jefferson Street,
Suite 500
Milwaukee, WI  53202
Telephone:  (414) 271-7100
kravit@kravitlaw.com
cjk@kravitlaw.com
bjg@kravitlaw.com
aha@kravitlaw.com
brp@kravitlaw.com

Heather M. Sneddon, #9520
Jason E. Greene, #13990
Anderson & Karrenberg, P.C.
50 West Broadway, Suite 700
Salt Lake City, Utah  84101
Telephone:  (801) 534-1700
hsneddon@aklawfirm.com
jgreene@aklawfirm.com

Jon V. Harper, #1378
Harper Law, PLC
P.O. Box 581468
Salt Lake City, Utah  84058
Telephone:  (801) 910-4357
jharper@jonharperlaw.com

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **CHARLES ROBERTS**, an individual, and **KENNETH MCKAY**, an individual, on behalf of themselves and others similarly situated,<br><br>　　　Plaintiffs,<br><br>v.<br><br>**C.R. ENGLAND, INC.**, a Utah corporation; and **OPPORTUNITY LEASING, INC.**, a Utah corporation,<br><br>　　　Defendants. | **UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MEMORANDUM IN SUPPORT**<br><br><br>Civil No. 2:12-CV-00302<br><br>Judge Robert J. Shelby<br>Magistrate Judge Cecilia M. Romero |

## TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

SETTLEMENT PROCEDURAL BACKGOUND...............................................................2

ARGUMENT..............................................................................................................6

I.     CLASS REPRESENTATIVES AND CLASS COUNSEL HAVE
       ADEQUATELY REPRESENTED THE CLASS.......................................................7

II.    THE SETTLEMENT AGREEMENT WAS REACHED FOLLOWING AN
       ARM'S LENGTH NEGOTIATION THROUGH MEDIATION. .............................10

III.    THE SETTLEMENT PROVIDES ADEQUATE RELIEF TO THE CLASS...........12

       A.     THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL ARE
              SIGNIFICANT AND MILITATE IN FAVOR OF SETTLEMENT. ...............12

       B.     THE PROPOSED METHOD OF DISTRIBUTING RELIEF TO CLASS
              MEMBERS IS CALCULATED TO BE EFFECTIVE AND EFFICIENT. ....15

       C.     THE PROPOSED AWARD OF ATTORNEY'S FEES AND
              LITIGATION COSTS IS APPROPRIATE..................................................17

       D.     THE PARTIES HAVE NOT ENTERED INTO ANY AGREEMENT
              REGARDING THIS SETTLEMENT BEYOND WHAT IS STATED IN
              THE PROPOSAL AT DKT. 489-1. ...........................................................19

IV.    THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY........................20

CONCLUSION..........................................................................................................22

Class Representative Kenneth McKay, by and through Class Counsel and pursuant to Federal Rule of Civil Procedure 23(e), hereby submits this unopposed motion to the Court for entry of an Order granting final approval of the Joint Stipulation of Class Action Settlement and Release (the "Settlement" or "Agreement") previously reached between all parties (Dkt. 489-1).

This motion is made on the grounds that the Settlement between McKay and Class Counsel, on the one hand, and Defendants C.R. England, Inc. and Opportunity Leasing, Inc. d/b/a Horizon Truck Sales and Leasing (together, "England" or "Defendants") and their counsel, on the other hand, was entered into after an arm's-length, good faith negotiation conducted with the assistance of a mediator and that the Settlement is fair, reasonable, and adequate to the Class.

## INTRODUCTION

Since this Court granted preliminary approval of the proposed Settlement on January 22, 2019 (Dkt. 501), the parties received significant feedback about it from the most important group of constituents — the Class Members — and the results are overwhelmingly positive. Through conventional and electronic mail, Settlement Administrator A.B. Data, Ltd. ("A.B. Data") was able to successfully deliver direct notice to 16,886 Class Members (approximately 96% of the Class). Still more Class Members became aware of the notice when it was published in a leading trade magazine, and when news of the Settlement hit the AP wire on April 26, 2019, resulting in a series of stories that ran in various trucking publications and legal news outlets.

The broad reach of the notice and the ensuing press coverage generated interest and activity from Class Members. During the notice period, Class Counsel had direct contact about the Settlement and its terms with ninety-three (93) Class Members. While anecdotal, their reactions to the Settlement were highly encouraging. Many of these Class Members expressed gratitude for Class Counsel's lengthy commitment to the case and for the bundle of settlement

1

benefits that had been secured on their behalf.  In fact, the two chief concerns raised by Class Members during those conversations were almost always: (1) to confirm that they were eligible to participate in the Class; and (2) to confirm that the mailing address A.B. Data had on file for them was accurate, so they would be ensured of receiving their settlement check.

After months of positive interactions with Class Members, it was no great shock to Class Counsel then when **only _one_ exclusion request and _zero_ objections were received from a Class of over 17,000.**[1]  Given the absence of any objections, and for all of the reasons stated in the parties' previous filings, including the motion for preliminary approval (Dkt. 489) and Class Counsel's pending motions for awards of attorney's fees, litigation costs, and incentive payments to the Class Representatives (Dkts. 503 and 505), this Court can now move forward to final approval with the added confidence that all of the various stakeholders to this proposed Settlement view it as being fair, reasonable, and adequate to the Class — which it objectively is.

The Class therefore requests that this unopposed motion for final approval be granted.

## SETTLEMENT PROCEDURAL BACKGROUND[2]

This Court certified a nationwide class on seven separate claims in its 116-page Memorandum Decision and Order on January 31, 2017.  Dkt. 304.  At the same time they were actively litigating the case in its post-certification phase, the parties engaged in two rounds of in-

---

[1] *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1103 (D. Kan. 2018) ("The fact that the class members have reacted so overwhelmingly in favor of the settlement further supports a finding that the settlement is fair and reasonable and adequate."); *In re Facebook, Inc., IPO Securities and Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) ("The reaction of the class to the settlement is perhaps the most significant factor to be weighted in considering its adequacy.") (Citations and internal quotes omitted); *Natl. Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("The complete absence of Class Member objections to the Proposed Settlement speaks volumes with respect to the overwhelming degree of support for the Proposed Settlement among the Class Members. That unanimous, positive reaction to the Proposed Settlement is compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate.").

[2] For a comprehensive discussion of the procedural history of this case, Class Counsel directs the Court to Dkt. 489, beginning on page 7.

person mediation in Los Angeles, California with Fairbank ADR's Robert Fairbank and Kimberly West serving as mediators.  Dkt. 489-5, Krawczyk Decl., ¶¶ 4, 5.  Following the second round of mediation in August 2018, the parties agreed in principle to resolve the matter and their agreement was reduced to a written Settlement Term Sheet signed by all parties on September 21, 2018.  Id., ¶ 6.  The long-form Settlement Agreement was then negotiated and executed on November 16, 2018.  Dkt. 489-1.

The Class, through Class Counsel, filed the Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. 489) and supporting materials on November 23, 2018.   On January 3, 2019, the Court notified the parties by Text Order that it sought additional information regarding five issues for the preliminary approval hearing on January 10, 2019:

> (1) provide the court with an estimate of the amount of relief the Class could expect to recover at trial. (2) specify all currently unspecified costs, e.g., mediation, discovery, notice, settlement administration, and court costs. If such specification is not practical, the parties should come prepared with reasoned estimates, i.e., a monetary range supported by reasoned quantitative analysis. (3) explain what it means to not actively collect debt. (4) provide the median, average, and maximum amount of debt an indebted Class Member will owe C.R. England if the Settlement is approved. (5) Explain whether interest will accrue on any debt owed to C.R. England, and if so, how. The parties are welcome to submit briefing regarding these issues in advance of the hearing.

Dkt. 493.  The parties submitted a joint brief addressing the issues raised by the Court (Dkt. 495) and further addressed those (and other related) issues during the preliminary approval hearing. Dkt. 499.  On January 22, 2019, this Court entered its Order Preliminarily Approving Class Action Settlement and Authorizing Notice of Proposed Settlement and Hearing Thereon.  Dkt. 501.

As part of the Court's January 22nd Order, A.B. Data was appointed Settlement Administrator and it caused notice to be mailed and e-mailed to the last known addresses for the

17,519 eligible Class Members in the Settlement Class. Schachter Decl., ¶¶ 7, 8, 10.[3] A.B. Data successfully delivered mailed notice to 16,307 Class Members. Schachter Decl., ¶¶ 8-9. In addition, A.B. Data successfully delivered e-mail notice to 8,236 Class Members, including to 579 Class Members who had their mailed notices returned as "Undeliverable as Addressed." Schachter Decl., ¶¶ 8-11. Between mail and e-mail notice efforts, A.B. Data was able to successfully reach 16,886 Class Members directly, which is approximately 96% of the total Class.[4] Schachter Decl., ¶ 11.

These direct notice statistics do not include the additional drivers who were notified through publication, nor those who learned of the Settlement from news coverage or from social media postings on Facebook and elsewhere online that followed completion of the notice program. With respect to publication notice specifically, A.B. Data worked with Class Counsel and counsel for England on a full-page advertisement that ran in the May 1, 2019 issue of Landline Magazine.[5] Schachter Decl., ¶ 12, Ex. B. Soon after that notice was published in Landline, Class Counsel received another wave of calls from Class Members and other interested drivers, suggesting that publication notice was broadly received. Krawczyk Decl., ¶ 3.

Beyond publishing the notice, Landline also posted a story about the Settlement at www.landlinemag.com. Other trucking-focused media outlets that covered the Settlement included Transport Topics (www.ttnews.com), Freight Waves (www.freightwaves.com), and the

---

[3] The Declaration of Eric Schachter Regarding Settlement Notice Plan Administration filed contemporaneously with this Motion is offered both in support of this Motion and in response to the requirements of Paragraph 7 of this Court's Preliminary Approval Order. Dkt. 501.

[4] A 96% success rate is above the acceptable range. *See* "Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide," Federal Judicial Center (2010) at 3, available at https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (explaining that "It is reasonable to reach between 70%-95% of the class." And that the median reach calculation approved on notice plans was 87 percent.)

[5] Landline is the official publication of the Owner-Operator Independent Drivers Association ("OOIDA").

Commercial Carrier Journal (www.ccjdigital.com), as well as Law360.com. Krawczyk Decl., ¶ 4.
From their frequent communications with drivers, Class Counsel learned that news of the
Settlement also filtered down to various online truck driver forums, including active Facebook
discussion pages, where still more Class Members became aware of it.[6]  Krawczyk Decl., ¶ 5.
Between the strong direct notice completion rate and the degree to which word of the Settlement
spread through trucker-specific news and discussion channels, Class Counsel is highly satisfied
that the notice program approved by this Court[7]  was effective and that it efficiently achieved its
objectives.[8]

     Throughout the notice period, Class Counsel regularly received calls and e-mails from
Class Members and personally spoke with 93 of them (along with at least another 20 drivers who
signed leases outside the Class Period) who were inquiring about the Settlement and whether they
were eligible to participate in it.  A number of additional Class Members and former drivers
contacted A.B. Data directly and had their questions answered by the Settlement Administrator.
Schachter Decl., ¶ 5.  A.B. Data received 2,231 calls to the toll-free number established for the

---

[6] This included a May 6, 2019 posting to the group "Truth About Trucking LLC," which linked to an article from
www.overdriveonline.com.  As of June 19, 2019, this post had 18 separate shares by other Facebook users. Krawczyk
Decl., ¶ 5. The Facebook post from May 6, 2019 by Overdrive Magazine to the same www.overdriveonline.com article
had 35 separate shares by other Facebook users. Id.

[7] "Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be
bound by a proposed settlement . . ." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004) (internal quotation
omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane
v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950).  Included in this Court's preliminary approval order is the
following language on the sufficiency of Class Counsel's proposed notice plan:  "The Court finds the settlement Notice
Plan to be the best practicable notice under the circumstances and satisfies the requirements of Rule 23, applicable
law, and due process.  The Court also finds that the manner of dissemination of the Notice provides individual notice
to all Class Members who can be identified through a reasonable effort; and is reasonably calculated, under all the
circumstances, to apprise the Class Members of the terms of the Settlement, and their right to object to the Settlement
or exclude themselves from the Settlement." Dkt. 501, ¶ 4.

[8]  After the Settlement was reached but before preliminary approval was granted, C.R. England also served the
requisite Class Action Fairness Act a/k/a CAFA Notice to all state Attorneys General and the U.S. Attorney General
on November 29, 2018. Krawczyk Decl., ¶ 6, Ex. A. There have been no adverse comments regarding or objections
to the settlement received from or filed by any of the aforesaid state or federal officials. Id.

Settlement with callers leaving 848 voicemails, each of which was promptly returned.  Id., ¶ 14. These conversations most often included confirmation of mailing addresses, responding to questions about specific Settlement details, and occasionally assisting families of deceased Class Members with the necessary paperwork to ensure they are included in the Class.  Id., ¶ 5.

When the opt-out deadline passed during the week of June 3, 2019, just a single Class Member had chosen to exclude himself from the Class.  Dkt. 511, Schachter Decl., ¶ 4.  As a result, there are 17,518 drivers who will be participating in this Settlement as Class Members, none of whom objected to its terms.[9]

## ARGUMENT

Approving a class action settlement follows a well-established two-step process.  First, the proposed settlement must warrant issuance of a "preliminary approval" order.  If it does, then after notice of the settlement has been provided to the class and a hearing has been held to consider the fairness of the proposed settlement, "final approval" may be ordered. *See, gen.* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21 (2004).  This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:40 (5th ed. 2016) (hereinafter *"Newberg"*) (describing class action settlement procedure).  The approval of a proposed class action settlement is a matter within the broad discretion of the trial court. *United States v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993).

"Settlements in class actions are generally favored." *Farley v. Family Dollar Stores, Inc.*,

---

[9] *In re Domestic Airline Travel*, No. MC 15-1404 (CKK), 2019 WL 2082906, at *10 (D.D.C. May 13, 2019) ("In approving class action settlements, courts gauge the reaction of the class by looking at the number of objections compared to the overall size of the class."); *In re Davita Healthcare Partners, Inc.*, No. 12-CV-2074-WJM-CBS, 2015 WL 3582265, at *3 (D. Colo. June 5, 2015) ("Finally, the fact that no objections to the settlement were filed by any shareholder weighs heavily in favor of approval of the derivative litigation settlement.").

No. 12-CV-00325-RM-MJW, 2014 WL 5488897, at *2 (D. Colo. Oct. 30, 2014) (citing *Newberg*);

*see also In re U.S. Oil and Gas Litigation*, 967 F.2d 489, 493 (11th Cir. 1992); *In re Syncor ERISA*

*Litigation*, 516 F.3d 1095, 1101, (9th Cir. 2008); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996);

*Kinard v. E. Capitol Fam. Rental, L.P.*, CV 15-1935 (TJK), , at *3 (D.D.C. May 28, 2019)

("[T]here is a "long-standing judicial attitude favoring class action settlements…[a]bsent evidence

of fraud or collusion, such settlements are not to be trifled with.") (Citations and internal quotes

omitted); *Geiger v. Sisters of Charity of Leavenworth Health System, Inc.*, No. 14-2378, 2015 WL

4523806, at *2 (D. Kan. July 27, 2015). Rule 23(e)(2) requires the Court to consider four aspects

of the Settlement in determining whether to enter the final approval order.

"If the proposal would bind class members, the court may approve it only after a hearing

and only on finding that it is fair, reasonable, and adequate after considering whether (A) the class

representatives and class counsel have adequately represented the class; (B) the proposal was

negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i)

the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of

distributing relief to the class, including the method of processing class-member claims; (iii) the

terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members

equitably relative to each other." Fed. R. Civ. P. 23(e)(2). As is demonstrated in the discussion

below, each of the Rule 23(e)(2) factors is met here; the Settlement is fair, reasonable, and

adequate; and the final approval hearing before this Court is set for July 9, 2019.

## I.   CLASS REPRESENTATIVES AND CLASS COUNSEL HAVE ADEQUATELY REPRESENTED THE CLASS.

"The first of Rule 23(e)(2)'s two procedural concerns—that 'the class representatives and

class counsel have adequately represented the class'—are redundant of the requirements of Rule

23(a)(4) and Rule 23(g), respectively." 4 *Newberg* § 13:48.  This Court certified the Class on

January 31, 2017.  Dkt. 304.  At that time, the Court held:

> Based on the class representatives' declarations and the information submitted relating to counsel, the court finds that Roberts and McKay will fairly represent the class. There exists no apparent conflict of interest between the class representatives and the putative class. And where, as here, Plaintiffs retained qualified and experienced attorneys who have competently pursued class certification and opposed dispositive motions, the court finds the representative parties will "prosecute the action vigorously on behalf of the class."

Dkt. 304, p. 91, quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Because the adequacy of Class Counsel and the Class Representatives is now being assessed in the face of a proposed settlement, "the focus at this point is on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2)(A and B) advisory committee note to 2018 amendment.  "These inquiries would augment any consideration of counsel's adequacy that was undertaken at the outset of the case, as they all involve issues that would have arisen subsequently." 4 *Newberg* § 13:48.  In conducting these inquiries, the Court is to consider "the nature and amount of discovery in this or other cases" or "the actual outcomes of other cases" because that "may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2)(A and B) advisory committee note to 2018 amendment.

There can be no question that Class Counsel in this matter was operating with sufficient information when they agreed to the proposed Settlement.  Discovery in the case—both before and after certification—was very active and illuminating.  The Parties exchanged more than 680,000 pages of relevant documents (with the overwhelming majority of those being produced by England) and propounded hundreds of written discovery requests, including multi-part

interrogatories requiring lengthy initial and supplemental responses under oath.[10]  Dkt. 472-7, SJM-APPX 1096, Krawczyk Decl., ¶ 2.  Both sides also engaged in significant third-party discovery with 18 subpoenas being served and the production and review of 7,164 pages of additional documents. Dkt. 489-5, Krawczyk Decl., ¶ 2.

Armed with that information, Class Counsel completed the depositions of seventeen (17) key defense witnesses, including those of C.R. England's Chief Operating Officer, its former Chief Financial Officer, the President of Opportunity Leasing, the former Vice President of England's Independent Contractor Division, the Director of Horizon, and the Vice President of Recruiting, Training and Corporate Development.[11] In addition, Class Counsel interviewed hundreds of Class Members as well as numerous former employees of C.R. England and non-class member drivers. Dkt. 504, Class Counsel Decl., ¶ 19.

Prior to recommending that the case be settled on these terms, Class Counsel had taken the full measure of the case facts, the potentially dispositive legal questions still to be answered, the benefits afforded by the Settlement, and the risks associated with continuing the litigation.  Given the significant value of the settlement package currently before the Court for evaluation, and the eight-year journey it took for the Class Representatives and their lawyers,[12] who together invested more than 25,000 hours and hundreds of thousands of dollars into the case, the Court should have

---

[10] Significant portions of the discovery exchanged were previously submitted to this Court as part of the briefing on Class Certification and in contesting dispositive motions filed by both sides.  The Court also received declarations from Dr. Charles Mahla of EconOne, who was retained by Class Counsel as an expert in this litigation.  Dkt. 214, 220, 478-7.  Some courts have considered the retaining of experts as relevant to the analysis of Class Counsel's work.  *See In re Nissan Radiator/Transmission Cooler Litigation*, No. 10-CV-7493 VB, 2013 WL 4080946, at *5 (S.D.N.Y. May 30, 2013); *In re Ikon Office Solutions, Inc., Securities Litigation*, 194 F.R.D. 166, 180 (E.D. Pa. 2000) (noting that plaintiffs' counsel retained forensic accounting experts in securities litigation).

[11]  In August 2012, Plaintiffs Roberts and McKay were also each deposed on video for two days in California. Dkt. 472-7, SJM-APPX 1096, Krawczyk Decl., ¶ 3.

[12] Defense counsel graciously acknowledged the quality of the work done by Class Counsel during the preliminary approval hearing in January 2019:  "I commend the plaintiffs' lawyers in this case. They did a very good job for their clients. This was a very hard fought case." Dkt. 499, 1/10/19 Hr'g Tr., 11:5-7.

no doubt that the Class has been adequately represented throughout this matter by Kenneth McKay,

Charles Roberts, and Class Counsel.[13]

## II.   THE SETTLEMENT AGREEMENT WAS REACHED FOLLOWING AN ARM'S LENGTH NEGOTIATION THROUGH MEDIATION.

Rule 23(e)(2)(B) requires that the Court consider whether "the [settlement] proposal was

negotiated at arm's length":

> This inquiry aims to root out settlements that may benefit the plaintiffs' lawyers at the class's expenses, sometimes called "collusive settlements." The concern is that the defendant will dangle such a healthy fee in front of the plaintiffs' lawyer that they will settle the class's claims at a discount. Evidence of a truly adversarial bargaining process helps assuage this concern and there appears to be no better evidence of such a process than the presence of a neutral third party mediator: thus, the Advisory Committee's notes states that "the involvement of a neutral or court-affiliated mediator or facilitator in [the settlement] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."

4 *Newberg* § 13:48 (quoting Fed. R. Civ. P. 23(e)(2)(A and B) advisory committee's note to 2018

amendment).

This Court previously expressed its confidence in this factor being met when it stated on

the record at the preliminary approval hearing that it has "no doubt that this proposed settlement

is a product of a fair and honest arm's length negotiation between the parties and their skilled and

experienced counsel."  Dkt. 499, 1/10/19 Hr'g Tr., 6:22-24.  Class Counsel is aware of no new

information that should cause the Court's view on this subject to change now.

Class Counsel engaged in extensive settlement negotiations with England and its counsel

in 2017 and 2018 prior to resolving this dispute. The Parties attended two separate mediation

---

[13] For a comprehensive discussion of the contributions made by Messrs. McKay and Roberts in their roles as lead plaintiffs and Class Representatives and of the work performed by Class Counsel since 2011, they direct the Court to the respective applications for payment of incentive awards (Dkt. 505) and for an award of attorney's fees and reimbursement of litigation costs (Dkt. 503).

sessions in Los Angeles with Robert Fairbank and Kimberly West of Fairbank ADR serving as mediators. Dkt. 489-5, Krawczyk Decl., ¶ 3. The first session took place on August 30, 2017, with principals on both sides in attendance, along with counsel for the Parties. Dkt. 489-5, Krawczyk Decl., ¶ 4. This in-person session ended without a settlement. Id. At the time, serious disagreements between the Parties existed regarding whether this would ultimately be an opt-in or opt-out Class, depending on the outcome of this Court's decision on England's Motion to Alter or Amend Class Certification Order.  *See* Dkt. 327 and related briefing.

Fairbank ADR remained actively involved following the first mediation session, conducting conference calls with both sides between 2 and 4 times per month for the next year. Once the Class composition question was answered by this Court, the Parties returned to Los Angeles for a second in-person mediation on August 30, 2018. Dkt. 489-5, Krawczyk Decl., ¶ 5. In the days leading up to the 2018 mediation, the Class filed a Motion for Partial Summary Judgment on their Utah Business Opportunity Disclosure Act ("UBODA") violation claim (Dkt. 470) and England filed a Motion for Summary Judgment seeking to dismiss certain claims and to narrow the Class period as to others. Dkt. 478. The Parties made substantial progress at the second in-person mediation and, a short time later, reached agreement on a written Settlement Term Sheet that was signed by all Parties on September 21, 2018. Dkt. 489-5, Krawczyk Decl., ¶ 6.

As counsel for England stated during the preliminary approval hearing: "We mediated twice before what I believe was one of the most well-respected mediators in the country. We were fortunate in that the mediator stayed engaged and diligent and we were in constant communication with him it seems like every day as we were litigating the case. And with his guidance we were

able to come up with a settlement that I think both sides agree are in the best interest [of] not only the parties but the court and counsel." Dkt. 499, 1/10/19 Hr'g Tr., 11:8-15.[14]

Because this hotly-contested case was vigorously negotiated *for years* before the Agreement was finally reached, and because that resolution was achieved with absolutely no collusion between the parties or their counsel, this factor is satisfied.

### III.    THE SETTLEMENT PROVIDES ADEQUATE RELIEF TO THE CLASS.

The first of Rule 23(e)(2)'s two substantive factors requires the Court to ascertain whether the relief provided to the Class is adequate by taking account of four sub-factors:

> (i)      the costs, risks, and delay of trial and appeal;
> (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv)     any agreement required to be identified under Rule 23(e)(3).

4 *Newberg* § 13:48 (citing Fed. R. Civ. P. 23(e)(2)(c)).  Each of these sub-factors supports ordering final approval of the Settlement.

### A. THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL ARE SIGNIFICANT AND MILITATE IN FAVOR OF SETTLEMENT.

The immediate recovery provided by this Settlement, which would distribute tens of millions of dollars to thousands of Class Members, while also providing debt relief and an opportunity to improve the credit ratings of those same Class Members, outweighs the uncertain

---

[14] The Court may also consider the recommendations of experienced counsel who have engaged in arms-length settlement negotiations. *See In re Am. Family Enters.*, 256 B.R. 377, 421 (D.N.J. 2000) ("significant weight should be given 'to the belief of experienced counsel that settlement is in the best interest of the class,' so long as the court is satisfied that the settlement is the product of 'good faith, arms-length negotiations.'" (internal citation omitted)); *Lyons v. Marrud, Inc.*, No. 66 Civ. 415, 1972 WL 327, at *2 (S.D.N.Y. June 6, 1972) ("Experienced and competent counsel have assessed these problems and the probability of success on the merits. They have concluded that compromise is well-advised and necessary. The parties' decision regarding the respective merits of their positions has an important bearing on this case.").  Class Counsel has significant class action experience.  *See* Dkt. 504, Class Counsel Decl., ¶ 7. And here, the Parties and their lawyers are all in agreement that this is a fair, reasonable, and adequate settlement.

future outcomes after trial and appeal. The long duration of this case so far, and the avoidance of further delays in delivering relief to Class Members, also strongly favor quieting this litigation now.[15]

Providing drivers with monetary relief, resolving their disputed debts with England,[16] and the possibility of improved credit scores and DAC reporting repair now is highly valuable, especially when contrasted with the risk to Class Members of limited or no recovery at the end of litigation. This consideration is substantial, particularly in light of the danger that the Class could be decertified, or that the Court or jury could find no liability, could award no damages, and that any subsequent orders or judgments would be subject to lengthy appellate review.

As the Court stated during the preliminary approval hearing, "[a]t every step I've been certain that there are serious questions of law and fact that placed the ultimate outcome of this case in considerable doubt." Dkt. 499, 1/10/19 Hr'g Tr., 6:24-7:2. Several of those serious legal questions were awaiting resolution when the parties finally reached a Settlement, which in part explains the timing of the Agreement. One example of this is the competing motions for summary judgment on the Class's certified claim under the UBODA, a central claim that was litigated as actively as any other in the case. *Cf.* Dkt. 470 and Dkt. 478. Another example is the appeal that is currently pending (but now stayed) before the Tenth Circuit Court of Appeals.[17] That appeal

---

[15] As the Court is aware, named plaintiff Charles Roberts passed away in February 2017, shortly after the Class was certified. Dkt. 506, Dunn Decl., ¶ 3. Roberts' untimely passing underscores the value and importance of not deferring the ultimate resolution of this case for years more into the future, as would be required to take it through trial and the exhaustion of appeals.

[16] At the preliminary approval hearing, this Court noted that the debt treatment is a prominent feature of the Settlement "[a]nd I guess the way I've been thinking about it is that is valid and enforceable debt pursuant to contracts entered into between the class members and defendant[s]. And that is the case unless or until the plaintiffs could survive dispositive motions in advance of trial, prevail on claims at trial, obtain recision [*sic*] of those contracts or some other relief I think under a fraud theory, which is the way it would have to go, survive posttrial motions, and then preserve all of that on appeal. … And so the discharge or forgiveness of that debt … is a significant and real benefit to the class and the class members." *See* Dkt. 499, Hr'g. Tr., 7:8-24.

[17] Class Counsel has fully briefed a jurisdictional challenge to the appeal, but all aspects of it are now stayed, along with litigation at the District Court level, pending this Court's consideration of the proposed Settlement. Dkt. 486,

addresses the application of Justice Stevens' concurrence in *Shady Grove Orthopedic Assocs. v. Allstate Ins.*, 559 U.S. 393 (2010), determining whether the opt-out class provision of Rule 23, or the opt-in requirement of the Utah Consumer Sales Practices Act, should apply under a Rules Enabling Act analysis to the seven claims certified in this case. *Roberts, et al. v. C.R. England, et al.*, Case No. 18-4056 (10th Cir.). If the Tenth Circuit was to reverse this Court's decision with respect to the application of *Shady Grove* (Dkt. 452), the class participation of thousands of potential Class Members would be at grave risk.

England previously sought interlocutory review in 2017 after this case was initially certified as a class action, see *C.R. England, Inc. v. Roberts,* Case No. 17-600 (10th Cir.),[18] and has been clear about its intentions to again seek decertification of the Class prior to trial. In addition, England sought and was granted the right to take the depositions of 96 absent Class Members (Dkt. 405) in an effort to, among other things, rebut the inference of Class-wide reliance on alleged misrepresentations. *See* Dkt. 467, p. 3. Not only would these 96 Class Members depositions require a year or more to complete, but depending on the nature of the testimony provided, they could endanger the Class's ability to prove the elements of reliance and causation on the merits for certain claims and endanger the continuing certification of one or more claims.

The uncertainty surrounding the outcome of continuing litigation, along with the substantial delay that would certainly result from it, both tilt heavily in favor of the Court ordering final approval of the Settlement now.

---

488; *Roberts, et al. v. C.R. England, et al.*, Case No. 18-4056 (10th Cir.), Document Nos. 010110057554, 010110057605.

[18] That petition for immediate appellate review was denied. *C.R. England, Inc. v. Roberts,* No. 17-600, 2017 WL 3611971 (10th Cir. Mar. 27, 2017).

## B. THE PROPOSED METHOD OF DISTRIBUTING RELIEF TO CLASS MEMBERS IS CALCULATED TO BE EFFECTIVE AND EFFICIENT.

"[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *4 Newberg § 13:48.* "Often it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims. A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment. Here, there is no requirement for Class Members to make an affirmative claim because each Class Member is readily identifiable. Class Members need only confirm that the Settlement Administrator has their appropriate mailing address and to prove any name changes or other personal matters that impact issuance of their share of settlement funds.[19] "The absence of a claims-made process further supports the conclusion that the Settlement is reasonable." *In re Checking Account Overdraft Litigation,* 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011).

Section 4.2 of the Settlement Agreement describes the process for distributing the settlement funds to Class Members after paying administration costs, incentive award payments, and Class Counsel's awarded fees and litigation costs. Dkt. 489-1.

> The Distributable Settlement Amount shall be divided among the Class Members according to the following formula: All Class Members who do not opt-out of the Class will receive the minimum amount of one-thousand dollars ($1,000) (the "Minimum Payment"). The remainder of the Distributable Settlement Amount in the Escrow Account (the "Net Distributable Settlement Amount") shall be distributed *pro rata* to all Class Members who signed the VLA and ICOA between May 27, 2008 and October 31, 2010 (the "Enhanced Payment"). By way of example, if the Net Distributable Settlement Amount has $3,713,500 remaining after all Class

---

[19] As previously noted, A.B. Data has already assisted a number of Class Members who have changed names, as well as heirs of deceased Class Members, to make sure that their shares of the settlement proceeds are distributed appropriately. Schachter Decl., ¶ 5.

> Members receive $1,000, then the 7,427 Class Members who signed the VLA and ICOA between May 27, 2008 and October 31, 2010 would receive an additional $500 ($3,713,500/7,427 = $500). This allocation formula reflects the fact that certain Class Members' claims would be subject to additional defenses, including, for example, statute of limitations defenses, based on when their claims accrued.

Dkt. 489-1, § 4.2(b).

In this case, there is no need for Class Members to make an affirmative claim because each of the 17,518 drivers who met the Court's class definition (Dkt 304), and who did not opt-out of the Class, has been identified from records provided by England.  Krawczyk Decl., ¶ 2.  A.B. Data, as Settlement Administrator, maintains a database of contact information for each Class Member and has updated it to have the last known mailing address and e-mail address for Class Members.[20] Schachter Decl., ¶¶ 4-5.

Using that information, "[t]he Settlement Administrator shall be solely responsible for mailing initial checks to Class Members for their share of the Distributable Settlement Amount, which for each Class Member will be in the amount of either the Minimum Payment or the Minimum Payment plus the Enhanced Payment (the 'First Check'), within sixty (60) days of the Effective Date."  Dkt. 489-1, § 4.2(d).  Class Members will then have 120 days to cash that First Check.  Id., § 4.2(e).  In the event that $25,000 or more of funds remain undistributed following the First Check-Cashing Deadline, those remaining funds shall be redistributed, after payment of any unpaid costs or fees incurred in administering and redistributing those funds, to Class Members who cashed their First Checks on a *pro rata* basis regardless of the amount of the First Check.  Id., § 4.3(a).  Class Members receiving this second check will have 90 days to cash it after issuance.

---

[20] A.B. Data updated and standardized the Class list addresses using the United States Postal Service National Change of Address database and has routinely updated Class Members' current addresses when Class Members or Class Counsel have provided new contact information.  Schachter Decl., ¶¶ 5, 7.

Id., § 4.3(c).  Any funds remaining thereafter shall escheat to the State of Utah. Id., § 4.3(e).

This process for distributing settlement proceeds to Class Members, which does not include any confusing or extraneous steps and which will deliver payments to Class Members in the most direct way possible, satisfies Rule 23(e)(2)(c)(ii)'s efficiency and effectiveness requirements.

### C.  THE PROPOSED AWARD OF ATTORNEY'S FEES AND LITIGATION COSTS IS APPROPRIATE.

Rule 23(e)(2)(c)(iii) directs the Court to address Class Counsel's attorney's fees and litigation costs, including the timing of payment.[21]  "Courts rightly focus on this factor in assessing the reasonableness of a settlement . . .  because an inordinate fee may be the sign that counsel sold out the class's claims at a low value in return for the high fee." 4 *Newberg* § 13:48.  The fees and litigation costs sought by Class Counsel are appropriate and reasonable in this case.  *See* Dkt. 503.

On April 25, 2019, plaintiffs filed their Motion for an Award of Class Counsel's Fees and Litigation Costs (Dkt. 503) and the Motion for Incentive Award Payments for Kenneth McKay and Heir of Charles Roberts (Dkt. 505).  The amounts sought in those motions were previously disclosed to Class Members in the long-form notice approved by this Court, mailed and e-mailed to them by A.B. Data, and also posted on www.crenglandclassaction.com.  Dkt. 496, pp. 4, 7; Schachter Decl., ¶ 6.

The Court provided Class Members with the opportunity to file objections to the Settlement, including the requested award of Class Counsel's fees and litigation costs and the incentive awards sought for the class representatives.  Dkt. 501, ¶ 12.  Not a single Class Member

---

[21] Rule 23(h) separately requires the Court to ensure that the fees awarded are reasonable.  The hourly rates set by Class Counsel are reasonable "'based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees.'" *Gottlieb v. Barry,* 43 F.3d 474, 485 n.8 (10th Cir. 1994) (quoting *Zuchel v. City & County of Denver,* 997 F.2d 730, 746 (10th Cir.1993)).  For a comprehensive discussion on the reasonableness of Class Counsel's requested fees and litigation costs, Class Counsel directs the Court to their pending motion for an award of attorney's fees and litigation costs. Dkt. 503.

objected.  "The absence of objections to a fee request, or the imposition of minimal objections, is seen as an indicator that the fee request is fair." *In re Elec. Carbon Prods. Antitrust Litig.*, 447 F. Supp. 2d 389, 406 (D.N.J. 2006) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005)); *see also In re Domestic Airline Travel*, No. MC 15-1404 (CKK), 2019 WL 2082906, at *10 (D.D.C. May 13, 2019); *In re Nu Skin Enterprises Inc.*, No. 214-CV-00033, 2016 WL 6916486 (D. Utah Oct. 13, 2016) (approving award of attorneys' fees and litigation expenses with no objection filed by Class Members); *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1008 (D. Colo. 2014); *Moyle, LLC v. Level 3 Commc'ns, LLC*, 2:10-CV-00477-BSJ, 2013 WL 12291488, at *4 (D. Utah Aug. 9, 2013) ("The notice also informed class members of their ability to object to the fee request. No class member objected to it. The absence of objections or disapproval by class members to Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.").

Regarding the timing of payment of Class Counsel's fees and litigation costs, England is required to fund the entire Settlement Amount within 30 days of entry of the Final Approval Order, regardless of any appeal.[22]  Dkt. 489-1, § 4.1(a).  However, by the plain terms of the Settlement Agreement, "under no circumstances shall any portion of the Settlement Amount be transferred to Class Counsel, the Class Representative, or any Class Member unless and until the Effective Date occurs."[23]  Id.  As a result, Class Counsel will not receive payment of any fees or litigation costs

---

[22] Defendants C.R. England and Opportunity Leasing, Inc. have already paid $1 million toward the Settlement to cover administrative costs related to notice consistent with paragraph 4.1(a) of the Settlement Agreement into a Qualified Settlement Fund established by A.B. Data. Dkt. 489-1.  The remaining $36.8 million is due to be paid into the account set up by the Settlement Administrator within 30 days following entry of the final approval order.  Id.

[23] The term "Effective Date" is defined in the Settlement Agreement as "the later of (i) the expiration of the time to appeal the Final Approval Order and Judgment with no appeal having been filed; or (ii) if such appeal is filed, the termination of such appeal on terms that affirm the Final Approval Order and Judgment or dismissal of the appeal with no material modification to the Final Approval Order and Judgment, and the expiration of the time to obtain any further appellate review of the Final Approval Order and Judgment." Dkt. 489-1, § 1.15.  Because no Class Member

awarded by this Court from the settlement funds until those settlement funds are available for distribution to the entire Class.

Based on the reasonableness of Class Counsel's requests for attorney's fees and litigation expenses, along with the appropriate timing at which those payments, if approved, will be made, this factor in the final approval analysis is also satisfied.

### D. THE PARTIES HAVE NOT ENTERED INTO ANY AGREEMENT REGARDING THIS SETTLEMENT BEYOND WHAT IS STATED IN THE PROPOSAL AT DKT. 489-1.

The final sub-factor of Rule 23(e)(2)(c) directs the Court to consider "any agreement required to be identified under Rule 23(e)(3)." Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."

"Since 2003, that provision has required settling parties 'to file a statement identifying any agreement made in connection with the settlement,' beyond the settlement agreement itself, which constitute 'related undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others.'" 4 Newberg § 13:48 (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment). There are no such agreements in existence here. Krawczyk Decl., ¶ 8. Each and every term of the Settlement is contained in the Settlement Agreement or, if not explicitly set forth therein, is the subject of one of the motions for incentive award payments to the Class Representatives, or for fees and litigation costs to be paid to Class Counsel, that are currently before this Court for decision. See Dkt. 489-1, 503, 505. Because there are no side agreements between the parties, nor any undisclosed undertakings that bear on the resolution of this case in

---

has objected, there cannot be an appeal from a Class Member. *In re Integra Realty Resources, Inc.*, 354 F.3d 1246, 1257 (10th Cir. 2004).

any way, this fourth of four requirements under Rule 23(e)(2)(c) is, likewise, satisfied.

### IV.   THE SETTLEMENT TREATS CLASS MEMBERS EQUITABLY.

Finally, Rule 23(e)(2)(D) requires the Court to determine whether the settlement proposal "treats class members equitably relative to each other." The Rule 23(e)(2) advisory committee's note to 2018 amendment states that "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief."

In this Settlement structure, "[a]ll Class Members who do not opt-out of the Class will receive the minimum amount of one-thousand dollars ($1,000)[.]" Dkt. 489-1, § 4.2(b). Beyond this minimum payment, Class Members who signed the Vehicle Lease Agreement ("VLA") and the Independent Contractor Operator Agreement ("ICOA") between May 27, 2008 and October 31, 2010 are also receiving an "Enhanced Payment" on a *pro rata* basis that will award them approximately $500 in additional funds.[24] The 7,427 Class Members who signed the VLA and ICOA between May 27, 2008 and October 31, 2010 are being treated differently because they have stronger claims than those who signed either before May 27, 2008 or after October 31, 2010.

If the case had not been resolved at this juncture, the Class Members who signed the VLA and ICOA before May 27, 2008 would have faced statute of limitations challenges to their claims that do not apply to the remainder of the Class Members. *See* Dkt. 478, Argument § II. B. Similarly, those who signed the VLA and ICOA after October 31, 2010 may not have seen the income/mileage graphs and certain other representations found in the England Business Guide

---

[24] By way of example, if the Net Distributable Settlement Amount has $3,713,500 remaining after all Class Members would receive $1,000, then the 7,427 Class Members who signed the VLA and ICOA between May 27, 2008 and October 31, 2010 would receive an additional $500 ($3,713,500 / 7,427 Class Members = $500).

(and the early versions of the Equinox Business Guide). Id., Argument § II.A.  Given the relative strength of their claims compared to the rest of the Class Members, it is fair and reasonable from a litigation merits/risk perspective for Class Members who signed the VLA and ICOA between May 27, 2008 and October 31, 2010 to receive an initial settlement payment that is estimated to be approximately $500 greater than those who signed before May 27, 2008 and after October 31, 2010.[25]

A motion for an incentive award of $43,500[26] for Kenneth McKay and $25,000 for the Estate of Charles Roberts was filed on April 25, 2019.  Dkt. 505.  While this does treat the Class Representatives differently from the rest of the Class, "incentive payments are generally upheld as a reasonable differential payment and 'raise[] no "red flag."'"  4 Newberg § 13:56 (quoting Klingensmith v. Max & Erma's Restaurants, Inc., No. CIV. A. 07-0318, 2007 WL 3118505, at *5 n.13 (W.D. Pa. Oct. 23, 2007)).  As noted in Newberg, "the class representative and class member are not similarly situated in regard to the single piece of differential recovery, the incentive payment: the class representative did extra work and took extra risk to earn that."  4 Newberg § 13:56.

Class Counsel in this case took great care in attempting to balance the relief Class Members will receive with the relative strength of their claims, working through more than a dozen alternatives before settling on the proposed distribution set forth in the preliminary approval

---

[25] A.B. Data has identified all 7,427 Class Members who will receive the Enhanced Payment.  Schachter Decl., ¶ 5.

[26] Paragraph 6 of the initial Settlement Term Sheet, which was signed on September 19, 2018 and later made an exhibit to the Joint Stipulation of Class Action Settlement and Release (Dkt. 489-1, Ex. A), specified that Class Counsel intended to seek an incentive award in the amount of $43,500 for McKay.  A request for an award in that amount is currently pending before the Court (Dkt. 505) and the correct amount of total incentive awards sought was accurately disclosed in the approved Settlement Notice.  Dkt. 489-3, p. 5.  When finalizing these papers, the parties realized that section 8.1 of the long-form Settlement Agreement contained a typo and specified an incentive award for McKay in the amount of $43,000 rather than $43,500.  Dkt. 489-1, p. 26.  This was an unfortunate typographical error.  So that the record is clear, Class Counsel is authorized to state that it has conferred with opposing counsel and England does not object to an incentive award for McKay in the amount of $43,500, nor did any Class Member.

motion.  Dkt. 489-1, § 4.2(b); Krawczyk Decl., ¶ 7.  All Class Members, regardless of when they signed the VLA and ICOA, will participate equally in the cancellation of Advanced Funds Debts, the agreement to not actively collect tuition debts, and the opportunity for credit reporting and DAC reporting repair.  As for the cash component, because the Class Members who signed the VLA and ICOA between May 27, 2008 and October 31, 2010 have objectively stronger claims than those of the rest of the Class, it is equitable for that group of 7,427 to receive the Enhanced Payment contemplated in the preliminarily-approved distribution plan.

By conscientiously considering the differences between Class Members and their claims, and crafting a settlement distribution plan that accounts for those differences, Class Counsel have satisfied  Rule 23(e)(2)(D).

## CONCLUSION

For the foregoing reasons, the Court should enter an order granting final approval of the settlement in this action.  To assist the Court, a draft of a proposed final approval order is being filed contemporaneously with this motion.

Dated this 25th day of June, 2019.

By: *s/Heather M. Sneddon*
Heather M. Sneddon, #9520
Jason E. Greene, #13990
Anderson & Karrenberg, P.C.
50 West Broadway, Suite 700
Salt Lake City, Utah  84101
Telephone:  (801) 534-1700
hsneddon@aklawfirm.com
jgreene@aklawfirm.com

Stephen E. Kravit
C.J. Krawczyk
Benjamin J. Glicksman
Aaron H. Aizenberg
Benjamin R. Prinsen
Kravit, Hovel & Krawczyk, S.C.

22

825 N. Jefferson Street,
Suite 500
Milwaukee, WI  53202
Telephone:  (414) 271-7100
kravit@kravitlaw.com
cjk@kravitlaw.com
bjg@kravitlaw.com
aha@kravitlaw.com
brp@kravitlaw.com

Robert S. Boulter
Law Offices of Robert S. Boulter
1101 Fifth Avenue, Suite 310
San Rafael, CA  94901
Telephone:  (415) 233-7100
rsb@boulter-law.com

Kevin P. Roddy
Wilentz, Goldman & Spitzer, P.A.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
kroddy@wilentz.com


Jon V. Harper, #1378
Harper Law, PLC
68 S. Main Street, Suite 800
Salt Lake City, Utah  84101
Telephone:  (801) 910-4357
jharper@jonharperlaw.com

*Attorneys for Plaintiffs and the Class*